Cohn, J.
At about eight o’clock at night on February 7, 1946, in the borough of Manhattan, city of New York, petitioner was driving his automobile in a northerly direction on Ninth Avenue. After he had passed the intersection of 39th Street and was a short distance north, his automobile came in contact with a pedestrian, who later died as a result of the accident. Just before the impact, plaintiff had come to a stop at 39th Street for a traffic light and had then proceeded north across the intersection for a short distance going at the rate of about fifteen or twenty miles an hour, when it is charged that he struck the deceased. At the same time a car driven by one Boland M. Mansfield had passed petitioner’s automobile and there was some question as to whether Mansfield’s car had first struck the deceased or whether the impact was with petitioner’s mar alone.
On May 23, 1946, petitioner was arraigned in the City Magistrate’s Court where a complaint charging him with manslaughter was dismissed after a hearing.
Some ten months after the accident and on December 13, 1946, petitioner received a notice of hearing from the Department of Taxation and Finance, Bureau of Motor Vehicles. Upon the completion of this hearing had before a referee, he was on February 6, 1947, informed that he had been found guilty of reckless driving in violation of section 58 of the Vehicle and Traffic Law. His license was revoked. Subsequently, upon a request for review, the Commissioner of Motor Vehicles confirmed the determination of the referee. It is the latter order of which petitioner complains.
Before the referee, petitioner testified that he was operating his car in a northerly direction and that when he had passed the intersection of 39th Street and was about the fourth door from the corner he saw a pair of hands fly up in front and to *367 the left side of his car. He stopped his car within five feet. He also stated that two fellows jumped on his running board and informed him that another car going in the same direction, later identified as being an automobile operated by Boland M. Mansfield, had passed him on his left side and that the Mansfield car had struck the pedestrian; that the impact had spun the man around and caused him to come into contact with the left front and side of petitioner’s car. ¡
A passenger in petitioner’s automobile named Schwartz-berg testified that when petitioner’s car had come to a stop, it was a foot and a half from the white line; that the car operated by Mansfield, “ honking ” its horn continuously, passed on the left side of the white line and struck the deceased and that he had seen the pedestrian waiting in about the middle of the roadway.
Mansfield stated that he knew nothing of the accident until he received a letter from an attorney six weeks to two months after its occurrence. He admitted being in the vicinity on the night of the accident but he testified that he had no recollection of the petitioner’s car and that his automobile never came in contact with any pedestrian crossing the street.
. Charles Slackman, who appeared to be a wholly disinterested witness, testified that he was crossing Ninth Avenue, walking in an easterly direction, when he observed the accident. He was in the middle of the avenue when the accident occurred. He testified that he saw two cars coming north and that Mansfield’s car pushed Kafka’s car over towards the west side of the avenue" and that it was Kafka’s car which struck the deceased. He also testified that Mansfield’s car continued going and passed him on his right while he was facing south. He called upon Mansfield to stop and although Mansfield at first slowed down, he later sped away. He took the license number of Mansfield’s car and gave it to the petitioner. He also testified that he noticed that the headlights of Kafka’s car were broken.
Our examination of the testimony leads us to conclude that there was no substantial evidence upon which a finding could be based that petitioner was guilty of a violation of section 58 of the "Vehicle and Traffic Law. That section provides: “ Beck-less driving shall mean driving dr using any motor vehicle or motor cycle or any appliance or accessory thereof in a manner which unreasonably interferes with the free and proper use of the public highway, or unreasonably endangers users of the *368 public highway. Beckless driving is prohibited. Every person violating this provision shall be guilty of a misdemeanor.”
■ The Court of Appeals has defined “ reckless driving ” to mean “ the running or operation of an automobile under such circumstances as to show a reckless disregard of the circumstances.” (People v. Grogan, 260 N. Y. 138, 144.) The word “ reckless ” imports a disregard of the consequences of the operator’s act, an indifference to the rights of others. (People v. Bearden, 290 1ST. Y. 478, 482; Matter of Hart v. Mealey, 287 1ST. Y. 39, 42.) Beckless driving is made a crime by statute and it means something more than mere negligence. {Matter of Lipschitz v. Mealey, 259 App. Div. 640, 642.) In this case, there may be sufficient evidence to sustain a claim for damages in a civil suit but ‘‘ A distance separates the negligence which renders one criminally liable from that which establishes civil liability.” {People v. Bosenheimer, 209 1ST. Y. 115, 123.) As was said in Matter of Sheridan v. Fletcher (270 App. Div. 29, 32) in a similar case: “ Beckless driving is not a mere traffic infraction. By statute it is made a crime. Becklessness is more than ordinary negligence, more than want of ordinary care. It is a wanton or heedless indifference to consequences. The word ‘ reckless ’ implies a substantially greater degree or grosser form of negligence and is definite as not recking of consequences, desperately heedless, as from folly, passion or perversity, impetuosity or rashly adventurous.”
Here there is no claim that petitioner was under the influence of liquor, that he was traveling at an excessive rate of speed, that he violated any rule of the road or that he did anything that would warrant an assumption that he showed a reckless disregard of the rights of others.
We also desire to call attention to the fact that in a proceeding such as this where revocation or suspension of a license is permissive, the statute requires that the holder of the license “ shall have an opportunity to be heard except where such revocation or suspension is based solely on a court conviction ” (Vehicle and Traffic Law, § 71, subd. 3, as amd. by L. 1944, ch. 165). G-ood cause must be shown to warrant revocation or suspension of a license, based upon competent, legal testimony. At such hearing petitioner has the right to be confronted by the witnesses who testify against him and he should be afforded an opportunity to cross-examine his accusers. (Matter of Yates v. Mulrooney, 245 App. Div. 146, 149; Matter of Brenner v. Bruckman, 253 App. Div. 607, 609, appeal dismissed 278 N. Y. 503.) In this case respondent based his determination *369 in part upon what the referee regarded as an apparent inconsistency between the testimony of petitioner adduced before him wherein petitioner testified that he was operating his car in a northerly direction on Ninth Avenue and that he had come to a stop at 38th Street, whereas according to the referee, in the Magistrate’s Court petitioner had testified that he had come to a stop at 39th Street. Petitioner has insisted throughout that at no time did he testify in the Magistrate’s Court. This claim seems to he well founded as no proof to the contrary has been supplied by respondent. Moreover, we think that no consideration should have been given to testimony of a police officer in the Magistrate’s Court concerning an alleged admission made by petitioner to the effect that the damage to petitioner’s car was caused by the accident. This officer was not called as a witness before the referee. In the absence of proof that he was not available as a witness, it would seem that for the reasons heretofore stated such testimony given in another proceeding should not have been accorded any weight here. (Matter of Yates v. Mulrooney, supra.)
The proof adduced we hold was insufficient to sustain the charge of reckless driving. Petitioner’s license should not have been revoked. The determination should accordingly be annulled, with $50 costs and disbursements to the petitioner and respondent directed to restore petitioner’s license.
Peck and Van Voorhis, JJ., concur; Callahan, J., dissents and votes to confirm.
Determination annulled, with $50 costs and disbursements to the petitioner. Settle order on notice.